**NATIONAL TREASURY EMPLOYEES UNION, Lila Sanders, Carol Fiel, and Richard Morris, Plaintiffs/Appellees,**

**Patent Office Professional Association, Sarah A. Lechok and Peter Martine, Plaintiffs/Cross-Appellants,**

v.

**Constance HORNER, Director, Office of Personnel Management, and United States of America, Defendants/Appellants.**

Nos. 87–1506, 87–1507 and 88–1075.

United States Court of Appeals, Federal Circuit.

March 7, 1989.

Gregory O'Duden, Deputy Director of Litigation, Nat. Treasury Employees Un-

ion, Washington, D.C., argued for plaintiffs/appellees. With him on the brief was Lois G. Williams.

Lynne K. Zusman, Lynne K. Zusman and Associates, P.C., Washington, D.C., argued for plaintiffs/cross-appellants. With him on the brief was James L. Weiner.

Frank A. Rosenfeld, Dept. of Justice, Washington, D.C., argued for defendants/appellants. With him on the brief were James M. Spears, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and William Kanter.

Before FRIEDMAN, NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Constance Horner, Director of the Office of Personnel Management (OPM), appeals the summary judgment of the United States District Court for the District of Columbia, Nos. 83–0279 and 83–0526 (D.D.C. March 13, 1987) [1987 WL 8704], in favor of plaintiffs, holding that OPM unlawfully denied certain special rate employees of the federal government an annual pay adjustment to which they were entitled pursuant to 5 U.S.C. §§ 5303(d) and 5305 (1982). The Patent Office Professional Association, Sarah A. Lechok and Peter Martine (POPA) cross-appeal from the judgment of the district court that the disparity between the salary rates for special rate engineers working in the United States Patent and Trademark Office and special rate engineers working in other branches of the government is not unlawful.

*Background*

Most civilian, white collar federal employees are paid in accordance with the statutory pay rates of the General Schedule (GS) which apply uniformly on a nationwide basis. When the President finds that pay rates in private enterprise are substantially above the GS rates and significantly handicap the government's recruitment or retention of well-qualified employees, he may, under 5 U.S.C. § 5303, set higher rates of pay for such employees. They are termed special rate employees.

Under 5 U.S.C. § 5305(a)(2) the President must annually "adjust the rates of pay of each statutory pay system in accordance with the principles under section 5301(a)" which in part provides that federal pay rates should be comparable with private enterprise pay rates for the same levels of work. If the President considers it inappropriate to make the pay adjustments prescribed by section 5305(a) because of national emergency or economic conditions, he may submit an "alternative plan with respect to a pay adjustment." 5 U.S.C. § 5305(c)(1).

OPM's appeal concerns the extent to which the pay adjustments under section 5305 affect special rate employees. In this regard, 5 U.S.C. § 5303(d) provides:

The rate of basic pay established under this section and received by an individual immediately before a statutory increase, which becomes effective prior to, on, or after the date of enactment of the statute, in the pay schedule applicable to such individual of any pay system specified in subsection (a) of this section, shall be initially adjusted, effective on the effective date of the statutory increase, under conversion rules prescribed by the President or by such agency as the President may designate.

Prior to 1982, the OPM regulation prescribed an increase in the special rates when the GS rates were raised under § 5305, but only "to the nearest rate in the new pay schedule which does not result in a decrease." 5 C.F.R. § 530.307(a) (1982). In 1982, this regulation was amended to provide that a revision in the GS rates "will have no effect on special salary rate schedules." 47 Fed.Reg. 42549 (1982) (codified at 5 C.F.R. § 530.307(a) (1983)).

NTEU and POPA filed separate actions, later consolidated in the United States District Court for the District of Columbia asserting that special rate employees must have their pay adjusted if there is an increase in regular pay rates under 5 U.S.C. § 5305. The plaintiffs contended that the failure of OPM to make automatic adjustments in special rates at the time of the October 1982 and January 1984 GS pay

raises violated 5 U.S.C. § 5303(d) and that to the extent 5 C.F.R. § 530.307(a), as amended, permits the withholding of these pay increases, that regulation is invalid.

The district court in granting summary judgment to the plaintiffs on this issue, held:

> All parties agree that special salary rate employees cannot ride two income escalators and receive a special schedule revision in addition to a general statutory increase. In the other extreme nothing in the legislative history reflects [OPM's] position that an increase in the statutory pay schedule would have *no effect* on the special salary pay rates. The plain language of section 5303(d) controverts this conclusion. Further, if Congress wanted the statutory pay increase to have no effect on special salary rates then the language could easily have stated such an intent.

At 9.

The court went on to conclude that because "[s]ection 5303(d) states unequivocably [sic] that the special rate employee's basic pay 'shall' be adjusted under conversion rules ... Congress intended that a change in the statutory pay schedule would affect the special pay rate schedules." *Id.* at 9–10. Further, according to the district court,

> the conversion formulas referred to in section 5303(d) were meant to adjust special salary pay rates so that there would be an increase *for that year* in an amount *at least* equal to the increase given under section 5305.

*Id.* at 10. In further explanation of its ruling, the district court in footnote 4 to its opinion said:

> 4. By this conclusion a pay raise to the regular statutory system does not mandate a raise to the special rate if for instance the special salary rate has been already increased that year by an amount equal to or more than the general increase.

*Id.* at 14.

POPA, which represents special rate engineers employed by the United States Patent and Trademark Office (Patent Office engineers or patent engineers), further contended in the district court that special rate Patent Office engineers are entitled to salaries comparable to the salaries of other federal engineers with similar qualifications who receive special rates of pay.

The district court noted that "Patent Office examiner engineers are grouped separately from a more general class of special rate employees who work as engineers" and that "this larger group is paid at a higher salary base." Slip op. at 11. The court held, however, that:

> [OPM] adequately explain[s] the uniqueness of patent examiner engineers to justify their separate grouping. Further, the special task of the PTO justifies the use of others, beside engineers, for examiners. The situation may be less than ideal but if staffing goals were met, even if fewer engineers were hired as examiners than expected, the Court must defer to the judgment of OPM in determining the necessity for a pay adjustment. On the facts of this case, the failure to revise patent engineers' special pay rates, or to include them in the larger category of federal engineers, was not arbitrary and capricious. The grant of authority under section 5303(a) and (b) is so broad that the Court must accept [OPM's] expertise on such delicate matters as pay raises and uphold determinations unless the record is void of any justification.

*Id.* at 12.

## ISSUES

### I

Whether special rate federal employees are entitled to have their pay adjusted when there is an increase in the statutory pay rates of other federal employees and, if so, whether the conversion formula established by the district court is required by the statute?

### II

Whether patent examiner engineers may be paid at special rates lower than the

special rates for other government engineers.

## OPINION

### I

■ A. Under 5 U.S.C. § 5303(a), the President or his designee, in this case OPM, may establish "higher minimum rates of basic pay" for occupations in locations in which it is found that private pay rates are "so substantially above the pay rates of statutory pay schedules as to handicap significantly the Government's recruitment or retention of well qualified individuals." The higher pay rates may be established for the "basic pay for one or more grades or levels, occupational groups, series, classes or subdivisions thereof" and corresponding increases may be made "in all step rates of the pay range for each such grade or level." *Id.* These adjustments may also be revised from time to time. 5 U.S.C. § 5303(b) (1982).

In the pay comparability provisions of 5 U.S.C. § 5301(a), one of the government's policies for federal employment is that federal pay rates are to be comparable with private enterprise pay rates for the same levels of work. In furtherance of that objective the President under 5 U.S.C. § 5305(a)(2) must annually "adjust the rates of pay of each statutory pay system in accordance with the principles under section 5301(a)."

In 5 U.S.C. § 5303(d), Congress prescribed the way in which section 5305 (annual pay adjustments) and section 5303 (special rate pay adjustments) are to interact. Prior to 1982, the OPM regulation, 5 C.F.R. § 530.307, implemented this statute by mandating that the special rate schedules should be "aligned" to general pay schedules when a section 5305 increase occurred.

§ 530.307 Effect of statutory pay increase.

(a) A statutory revision of the pay schedule of the pay system for which special rates are authorized under section 5303 of title 5, United States Code, automatically changes the special minimum rate (if more than the minimum rate for the new pay schedule for the grade or level concerned) to the nearest rate in the new pay schedule which does not result in a decrease and the other special rates for the special rate range are changed to similar rates in the new schedule adjusted on the basis of the new special minimum rate.

In 1982, that regulation was amended by OPM to provide:

§ 530.307 Effect of general pay increase on special salary rate schedules.

(a) A general revision of the regular pay schedule of the pay system for which special salary rates are authorized under section 5303 to title 5, United States Code, will have no effect on special salary rate schedules. Special salary rate schedules will be reviewed at least annually and adjusted, if warranted, by the Office of Personnel Management.

47 Fed.Reg. 42549 (1982) (codified at 5 C.F.R. § 530.307(a) (1983)).

B. OPM contends that the revision to the regulation in 1982 is itself an appropriate conversion rule meeting the requirements of, and within the scope of the discretion granted by the Congress in, 5 U.S.C. § 5303(d). It concedes on brief, however, that the 1982 regulation provision that a raise in the statutory pay rates "will have no effect on special salary rate schedules" cannot be read literally; it argues instead that this language was intended to mean only that "there will be no *automatic* effect, but each special rate will be reviewed annually, generally at the time of the GS raises." (Emphasis added.)

Even under OPM's present interpretation of the regulation, the adjustments in pay for the special rate employees would not necessarily have to be made at the time of the statutory pay increase. The statute and the legislative history, however, do not support this view as the district court properly concluded. In construing a statute, the starting point in every case is the language itself. *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988).

Here the statute expressly provides that the adjustment shall be "effective on the effective date of the statutory increase." 5 U.S.C. § 5303(d) (1982).

The legislative history reinforces the unambiguous language of the statute. The Senate Report to the Government Employees Salary Reform Act of 1964, Pub.L. 88–426, 78 Stat. 400, *reprinted in* 1964 U.S.Code Cong. & Admin. News 459, explained with respect to section 504(d), which was the predecessor to section 5303(d), that:

> [t]he new subsection (d) provides that when statutory schedules are adjusted, the pay of an employee receiving a special rate ... *will be adjusted* in accordance with conversion rules prescribed by the President *on the effective date of adjustment of the statutory schedules.* (Emphasis added.)

S.Rep. No. 1121, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.Code Cong. & Admin. News 2730, 2740.

We conclude, based on the statutory language and legislative history, that Congress intended that adjustments under section 5303(d) for special rate employees would be made effective at the time of a statutory pay adjustment under section 5305.

■ We also agree with the district court that the regulation adopted in 1982, to the extent it provides that a change in the statutory pay system will have no effect on the special pay schedules, is not a proper implementation of the statute. Moreover, the interpretation now offered by OPM—that 5 C.F.R. § 530.307 (1983) means only that the "annual increase in General Schedule rates does not have an automatic effect on special rates"—does not in our view satisfy the statutory mandate. Merely providing for an annual review of the salaries of special rate employees can hardly be considered a promulgation of conversion rules. The regulation does not provide any guidance as to the criteria and standards to be used in determining how special rate employees' pay should be adjusted.

While OPM was given broad discretion to establish the rules under which statutory pay increases would be applied to special rate employees, we are convinced that Congress did not intend that they be ad hoc determinations with uncertain effective dates. The amended regulation is more nearly an implementation of section 5303(b), which permits rates of basic pay of special rate employees to be revised from time to time, than a promulgation of conversion rules under section 5303(d).

■ C. OPM contends that the conversion rule proscribed by the district court for adjusting the pay of special rate employees is improper. The district court determined that "the conversion formulas referred to in section 5303(d) were meant to adjust special salary pay rates so that there would be an increase *for that year* in an amount *at least* equal to the increase given under section 5305." Slip op. at 10.

Congress first enacted the special salary rate provision as part of the Postal Service and Federal Employees Salary Act of 1962, Pub.L. 87–793 § 504, 76 Stat. 832, *reprinted in* 1962 U.S.Code Cong. & Admin. News 972, 984, as a flexibility measure to permit designated employees to be paid at rates higher than those they would ordinarily receive under the statutory pay schedules. The statute initially did not include any provision similar to section 5303(d). When the statute was amended in 1964 to include the predecessor to section 5303(d), Senate Report No. 1121 explained that "[t]he problem of adjusting the pay of different groups of employees ... varies to such an extent that appropriate methods of adjustment can most effectively be prescribed by regulations." 1964 U.S.Code Cong. & Admin. News at 2740.

Similarly, the Civil Service Commission contended during hearings on the amendment that the "[m]ost practical approach" is to "convert these rates under regulatory rather than statutory rules, so [the] rules can be adapted to a variety of circumstances and unforeseen cases." Hearings on H.R. 11049 before the Senate Comm. on Post Office & Civil Service, 88th Cong., 1st and 2nd Sess. 51 (1963–64). Senate Report

No. 1121 recognized these concerns by stating that "[w]ithout this language, the Civil Service Commission believes these [special rate] employees would, under normal conversion rules, receive benefits which were not intended" when special pay rate schedules were established.[1] 1964 U.S.Code Cong. & Admin. News at 2745.

Thus, Congress contemplated that the formulations or conversion rules necessary could not adequately be prescribed by the legislative process.[2] The district court in its opinion also recognized that "it is logical that a single conversion rule under subsection (d) would be inappropriate." Slip op. at 10. Yet it proceeded to adopt a single automatic rule requiring that the full statutory pay raise, less any prior special rate increase during the year, must be paid to special rate employees.

NTEU attempts to justify the district court's formula on the basis that "[b]y writing section 5303(d) in a way that expressly tied the annual adjustment date of special rate employees to the very date when regular rate employees received their statutory 'comparability' increases under 5 U.S.C. § 5305, Congress clearly signalled its intention that special rate employees should, at a minimum, keep in step with those employees by themselves receiving a comparability adjustment." It also argues that equal increases are required because 5 U.S.C. § 5305, which provides for annual adjustments for regular rate employees, "dovetails with section 5303 and shows that Congress so intended." These arguments are unpersuasive. NTEU can point to nothing in the statute or the legislative history requiring the amount of increases for special rate employees to be the same as for regular employees. The statute counsels against such a construction by giving OPM broad discretion to prescribe conversion rules.

The special rate schedules authorized by section 5303 need not be based on the pay comparability principles of section 5301 nor related to the annual increases determined under section 5305. Rather, the section 5303 special rate schedules are bottomed on the pay needed to recruit and retain employees in specific occupational groups and in specific geographic locations. The special rates may therefore be significantly greater than the overall government pay comparability requirements of sections 5301 and 5305.

It is illustrative that on August 26, 1982 President Reagan notified the Congress that a full comparability adjustment would result in an average 18.47 percent pay increase, but he proposed an alternative plan of four percent. Critical employment specialties to the government might well require that certain of the special rates provide for pay approaching or exceeding the 18.47 percent comparability factor reported. If so, the duplicative pay which concerned Congress would be a potential for several years. The parties admit that Congress was concerned that special rate employees not "ride two income escalators," and we are convinced that the district court's annual approach does not fully address that concern. The district court's rule looks only to the circumstances of a given year and does not take into account the effect of prior years' pay adjustments. OPM, with its expertise in government pay rates and comparability studies, is in a far better position than the district court to determine the rules necessary to prevent special rate employees from receiving duplicative increases. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

We are unpersuaded by the rationale of the district court that Congress must have intended that a change in the GS rates will always require an increase in special rates because § 5303(d) "states unequivocably [sic] that the special rate employee's basic pay 'shall' be adjusted under conversion rules." Slip op. at 9. The court appears to read the phrase "shall be adjusted" in isolation. Properly construed the statute re-

---

**1.** The reference to "normal conversion rules" may well have included the simple, automatic rule articulated by the district court.

**2.** In this connection, NTEU points out in its brief that in October, 1982 there were some 132 special rate schedules in effect.

quires that adjustments to special rates shall be made pursuant to conversion rules. Further, because the criteria applied for making the annual comparability pay adjustment, or the alternative proposed by the President, differs from that applied in adjusting the pay of special rate employees, we do not view the statutory language as necessarily requiring an upward adjustment of the pay for each category of the latter employees each time there is a statutory pay increase. A proper conversion rule may, in appropriate circumstances, result in no increase. For example, if a special salary rate adjustment had been made in the preceding year which exceeded the total of the annual statutory increases for the current and the preceding years, an adjustment for current year's increase would seem unnecessary.

Finally, we note that even if the district court's formulation of a conversion rule were not subject to the objections discussed above, it is inappropriate for the court to exercise the discretion the Congress vested in the President and his delegate, OPM. *See Udall,* 380 U.S. at 16, 85 S.Ct. at 801. *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").

Accordingly, the district court's judgment is vacated insofar as it prescribes a definitive conversion rule and the case is remanded for further proceedings. On remand, the district court should require OPM to establish conversion rules in the manner contemplated by Congress.[3] In this connection, the court must consider whether the pre–1982 regulation has any continuing effect, since we have affirmed its determination that the 1982 regulation is not a proper implementation of section 5303(d). Further, we note that 5 C.F.R.

§ 530.307(b) continued unchanged after the 1982 amendment to subparagraph (a), but the parties have not indicated whether the rules in subparagraph (b) properly implement section 5303(d).

■ D. NTEU further contends, as it did before the district court, that the promulgation of the 1982 regulation (5 C.F.R. § 530.307(a)) was procedurally deficient. The district court did not reach this argument, explaining that because "5 C.F.R. § 530.307 is substantively infirm, the issue of procedural violations need not be addressed." Slip op. at 12. Since we also determine that the 1982 regulation is not a proper implementation of the statute, it is unnecessary to consider the procedure under which it was adopted.

## II

POPA appeals the decision of the district court that OPM did not abuse its discretion in failing to revise the special rate schedules applicable to patent engineers or in failing to include them in the larger category of federal government engineers having special rate salary schedules. POPA claims that the special rate schedules for such patent engineers are impermissibly below those paid to other federal government engineers and are, therefore, arbitrary or capricious, or otherwise not in accordance with law.

POPA's argument on appeal is primarily that the pay comparability standards of 5 U.S.C. § 5301(a) (1982) should be superimposed upon the broad discretion given OPM under 5 U.S.C. § 5303 (1982) to adjust pay rates to recruit or retain employees. Section 5301(a) sets forth the policy of federal employment that (1) there be equal pay for equal work; (2) pay distinctions equal work distinctions; (3) federal pay rates be comparable with private enterprise pay rates of the same levels of work; and (4) pay levels for the statutory pay systems be interrelated. POPA then concludes that because of these general principles no distinction

---

3. OPM has advised the court that the Director of OPM announced a new policy on annual pay raises for employees who are paid under special

rates effective for fiscal year 1989. *See* Federal Personnel Manual Bulletin 530–63 (July 15, 1988).

should exist in the special rate pay of patent engineers and other engineers.

Under 5 U.S.C. § 5303(a) (1982), OPM may establish higher rates of pay for certain job categories when it "finds that the pay rates in private enterprise *for one or more occupations in one or more areas or locations* are so substantially above the pay rates of statutory pay schedules *as to handicap significantly the Government's recruitment or retention of well-qualified individuals.*" (Emphasis added.) By its terms, section 5303 is an exception to section 5301(a). The principles of section 5301(a) therefore cannot be generally applied to determinations made under section 5303. Moreover, OPM is given broad discretion under section 5303 to formulate the classes of employees by occupational group and by geographic location to which special salary rates are to be applied.

The district court found that OPM "adequately explain[s] the uniqueness of patent examiner engineers to justify their separate grouping." Slip op at 11. There is substantial evidence in the record to support this finding. Moreover, POPA's argument on appeal that patent engineers perform functions substantially different from those performed by other government engineers confirms the correctness of the district court's finding. POPA explains, for example, that "[p]ersons who work as engineer Patent Examiners are first and foremost Patent Examiners and are only secondarily specialists in a particular field." Accordingly, we cannot say that the district court erred in concluding that the action of OPM was not arbitrary or capricious.

We have considered POPA's other arguments and consider them unpersuasive. The district court is therefore affirmed in respect of POPA's cross-appeal.

### COSTS

The parties shall bear their respective costs.

AFFIRMED–IN–PART, VACATED–IN–PART and REMANDED