NATIONAL TREASURY EMPLOYEES UNION, Lila Sanders, Carol Field, Robert A. Morris, and all similarly situated unnamed individuals, Plaintiffs–Appellants,

and

Patent Office Professional Association, Plaintiff,

v.

James KING, Director, Office of Personnel Management, Defendant–Appellee.

No. 96–1263.

United States Court of Appeals, Federal Circuit.

Jan. 5, 1998.

Elaine Kaplan, Deputy General Counsel, National Treasury Employees Union, of Washington, DC, argued for plaintiffs-appellants. With her on the brief was Gregory O'Duden, General Counsel.

Frank A. Rosenfeld, Attorney, Civil Division, Appellate Staff, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and William Kanter, Deputy Director, Appellate Staff.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge,* and BRYSON, Circuit Judge.

ARCHER, Senior Circuit Judge.

National Treasury Employees Union and the plaintiff class (collectively NTEU) appeal the judgment of the United States District Court for the District of Columbia, holding that the conversion rule promulgated by the Office of Personnel Management (OPM) met the requirements of 5 U.S.C. § 5303(d) (1994) and that plaintiffs' recovery must be based on that rule because the pre–1982 conversion rule was invalid, Civil Action Nos. 83–0279, 83–0526 (D.D.C. Mar.5, 1996). Although the new conversion rule satisfies the requirements of section 5303(d), the pre–1982 rule was also a valid implementation of the statute and, thus, should be the basis of plaintiffs' recovery. We, therefore, affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

This case involves plaintiffs' challenge to OPM's proposed conversion rule which was promulgated pursuant to 5 U.S.C. § 5303(d)

(1994). That section defines the relationship between the pay rate schedules for General Schedule (GS) employees and special rate employees in the context of a statutory pay raise authorized for GS employees.[1] Section 5303(d) provides:

> The rate of basic pay established under this section and received by an individual immediately before a statutory increase, which becomes effective prior to, on, or after the date of enactment of the statute, in the pay schedule applicable to such individual of any pay system specified in subsection (a) of this section, shall be initially adjusted, effective on the effective date of the statutory increase, *under conversion rules prescribed by the President or by such agency as the President may designate.*

(Emphasis added). Prior to 1982, OPM's regulation provided that:

> [a] statutory revision of the pay schedule of the pay system for which special rates are authorized under [5 U.S.C. § 5303] automatically changes the special minimum rate (if more than the minimum rate for the new pay schedule for the grade or level concerned) to the nearest rate in the new pay schedule which does not result in a decrease and the other special rates for the special rate range are changed to similar rates in the new schedule adjusted on the basis of the new special minimum rate.

5 C.F.R. § 530.307(a) (1982) (pre–1982 rule). In 1982, OPM amended the regulation to provide that a change in the GS rates "will have no effect on special salary rate schedules. Special salary rate schedules will be reviewed at least annually and adjusted, if warranted, by the Office of Personnel Management." 5 C.F.R. § 530.307(a) (1983) (1982 rule).

NTEU[2] challenged the 1982 rule in the U.S. District Court for the District of Colum-

---

* Senior Circuit Judge Glenn L. Archer, Jr. vacated the position of Chief Judge on December 24, 1997.

1. The purpose behind the GS and special rate schedules is discussed in this court's prior decision in this case, *see National Treasury Employees Union v. Horner,* 869 F.2d 571, 572 (Fed.Cir. 1989).

2. The Patent Office Professional Association (POPA) also challenged the status of Patent Office engineers under this regulation in the original action. This part of the case, however, has been resolved and is not before us. POPA, therefore, is not a party to this appeal.

bia. The district court held this rule invalid and provided its own conversion rule. On appeal, this court affirmed the district court's judgment as to the invalidity of the 1982 rule because it did not make pay adjustments to special rate employees effective at the time of the statutory pay adjustment under section 5305. *See National Treasury Employees Union v. Horner*, 869 F.2d 571, 574–75 (Fed.Cir.1989). We determined that the 1982 rule was invalid also because it did "not provide any guidance as to the criteria and standards to be used in determining how special rate employees' pay should be adjusted" and was thus "more nearly an implementation of section 5303(b), which permits rates of basic pay of special rate employees to be revised from time to time." *Id.* at 575.

However, we vacated the district court's judgment insofar as it prescribed a conversion rule and remanded with instruction to the district court to allow OPM to promulgate appropriate conversion rules. *Id.* at 577. We rejected the district court's rule because it "look[ed] only to the circumstances of a given year and [did] not take into account the effect of prior years' pay adjustments"; thus, it did not fully address Congress's concern about duplicative pay raises. *Id.* at 575. The district court's rule was also deficient because it required an increase in special rates whenever there was a change in GS rates; a proper rule may result in no increase in appropriate circumstances. *Id.* at 576–77.

On remand, the district court initially rejected the proposals of both NTEU and OPM because they did not comply with the statutory requirements of section 5303. It also determined that the pre–1982 rule did not comply with the statutory requirements and was thus invalid because it "was based upon a mechanical or automatic formula without any apparent relationship to a need to review the private sector to determine whether in the case of a given class of special rate employees, an adjustment was necessary to recruit and retain such employees."

The district court then established four factors with which any regulation would have to comply. First, OPM "must be cognizant of the original general pay rate of the employee who is now designated as a special rate employee ... to avoid any action that would allow the special rate employee to fall below what that employee would have received if still a general rate employee." Second, the starting point for making any special rate adjustments shall be the statutory GS increase because the factors leading to the statutory increase will likely affect the special rate employees as well. Third, the agency should then review the special rate schedule for a given occupation and location to determine whether an adjustment is necessary to recruit and retain special rate employees. After performing this review, OPM may conclude that no increase is necessary for the special rate employees. Fourth, the agency is to make adjustments based on the statutory requirements of section 5303 and not for mechanical reasons or for purposes of automatic adjustments. The court then referred the matter back to OPM to formulate a conversion formula that complied with these four factors.

In response, OPM proposed the following regulations:

§ 530.304 Annual Review.

(a) Prior to an adjustment in the scheduled rates of pay for one or more grades or levels for which special rates have been authorized under 5 U.S.C. 5305, but at least annually, OPM shall review special salary rate schedules to determine whether the factors in § 530.303 of this part and paragraph (b) of this section require those schedules to continue, and, if they are to continue, the extent to which they are to be adjusted, if at all.

(b) In addition to the factors in § 530.303 of this part, OPM shall consider, for the purpose of making the determination required by paragraph (a) of this section -

(1) The former non-special pay rates of the special rate employees to ensure that any adjustment in the special rates of pay would not cause those rates to fall below the non-special rates of pay to which the special rate employees would otherwise have been entitled;

(2) The likelihood that the factors leading to a statutory adjustment in pay will affect special rate employees, as well; and

(3) Other special rate pay adjustments that occurred prior to the date of the anticipated statutory pay adjustment.

(c) Any adjustment in the special rates of pay shall be based on the factors in paragraphs (a) and (b) of this section and shall not be made solely for mechanical reasons or for the purpose of providing automatic adjustments. Any adjustment must be based on the pay OPM determines is necessary in a given occupation and area to recruit and retain the special rate employees.

(d) In conducting the annual review, OPM shall designate lead agencies for assistance in coordinating the collection of relevant data. All agencies are responsible for submitting complete supporting data upon request to OPM or the lead agency, as appropriate.

(e) When special rates are adjusted as a result of this review, an employee's pay shall be fixed in the same manner provided in § 530.307 of this part.

§ 530.307 Effect of an adjustment in scheduled rates of pay.

(a) Except as provided in paragraphs (b) and (c) of this section, when an employee was receiving a special rate immediately before the effective date of an adjustment in scheduled rates of pay, the employee shall receive on that effective date the rate of basic pay for the numerical rank in the new special rate range established under § 530.304 of this part for the employee's grade or level that corresponds to the numerical rank of the special rate the employee was receiving immediately before that effective date.

(b) If a special rate range is terminated under § 530.304 of this part, an employee who was receiving a special rate immediately before the effective date of an adjustment in scheduled rates of pay shall receive on that effective date the numerical rank in the new statutory pay schedule for the employee's grade or level that corresponds to the numerical rank of the special

rate the employee was receiving immediately before that effective date.

(c) In the case of an employee in a position under the Performance Management and Recognition System who was receiving a special pay rate immediately before the effective date of an adjustment in scheduled rates of pay, the employee shall receive on that effective date a rate of basic pay determined under § 540.106 of this chapter.

The district court accepted OPM's proposed rule because it conformed with the statute and the directions of the district court and this court. Over the objection of the plaintiffs, the court also determined that the new rule should be used to calculate the plaintiffs' recovery because in its view the pre–1982 rule was invalid.

## DISCUSSION

■ In reviewing an agency's regulation, a court must determine whether Congress has spoken directly to the precise question at issue; if, however, "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–844, 104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694 (1984). Congress's delegation was express in this case, *see* 5 U.S.C. § 5303(d) (1994); *National Treasury*, 869 F.2d at 577. We must give controlling weight to OPM's regulations unless they are arbitrary, capricious, or manifestly contrary to the statute. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

Two issues are presented on this appeal: whether OPM's proposed new rule is a valid implementation of section 5303(d) and whether the pre–1982 rule was correctly held to be invalid and, thus, not an appropriate regulation for measuring damages for the plaintiff class. We consider each in turn.

### I

■ NTEU argues that OPM's proposed rule is invalid because it contravenes the statute and our prior decision in this case.

According to it, OPM's rule is not a "conversion rule" as required by the statute. Instead, it contends that OPM's rule is nearly identical to the rule that we rejected previously because the rule only requires a review of the special rate schedules and does not mandate a pay raise to the special rate employees whenever there has been a statutory pay schedule adjustment.

■ We disagree. Our prior decision noted that section 5303(d) was intended to give OPM the discretion to determine the relationship between changes to the GS schedule and the special rate schedules through conversion formulas. Congress's concern when enacting this subsection was to prevent special rate employees from riding two income escalators and, thus, obtaining duplicative pay raises. See National Treasury, 869 F.2d at 576. As previously discussed, we held that the 1982 rule was fatally defective because it failed to make special rate pay adjustments effective on the same date as GS schedule changes and because it "[m]erely provided for an annual review of salaries" without "any guidance as to criteria and standards to be used in determining how special rate employees' pay should be adjusted." Id. at 575. Accordingly, we considered the 1982 rule to be an implementation of section 5303(b), not a conversion rule under section 5303(d). Id.

OPM's proposed rule addresses these concerns. Contrary to NTEU's arguments, this rule does not resemble an "implementation of section 5303(b)". The rule does provide guidance as to the criteria that OPM will use, such as ensuring that the special rates do not drop below the analogous GS rates and determining whether the factors requiring the GS rate change also support the need for a change in the special rates. This rule also requires OPM to review the special salary rates whenever there is a statutory change in GS rates to determine if a raise for special salary employees would be duplicative. Under the rule, OPM will further reconsider simultaneously the special rate pay schedules pursuant to section 5303(b) to determine

whether the pay raise would be appropriate nonetheless. If OPM decides that a raise is appropriate, the rule requires the effective date to be the same as the effective date of the GS schedule change. Thus, OPM's proposed regulation is a valid implementation of section 5303.[3]

NTEU contends, however, that the term "conversion rule" is a term of art that belies the broad discretion afforded OPM under its proposed rule and that requires a mechanical translation of a pay increase. Particularly, NTEU points out that, in other parts of the statute where Congress intended to leave the propriety of an adjustment entirely to the discretion of the President, Congress omitted reference to "conversion rules" and instead provided that such adjustments are available "to the extent as the President (or his designated agency) considers appropriate...." 5 U.S.C. § 5305(g)(1) (1994) (dealing with locality-based pay increases available under Federal Employee Pay Comparability Act of 1990). NTEU also points out that in implementing other conversion rules, OPM promulgated rules that were mechanical in nature. See, e.g., 5 C.F.R. § 531.205 (1996); 5 C.F.R. § 531.301 (1982). Thus, NTEU argues that, although Congress left the promulgation of conversion rules to the discretion of the President or his designee, that discretion is limited to promulgation of a mechanical rule in which the President can select the relevant factors.

We are not persuaded that the statute or legislative history requires that a "conversion rule" be mechanically applied. OPM is not precluded from promulgating a more general, discretionary rule such as the one offered here just because it has used mechanical rules in the past. Congress left the design of appropriate rules to the discretion of OPM and it properly exercised that discretion in this case.

NTEU also argues that OPM's rule is inappropriate because it fails to ensure that special rate employees will receive the same raises over time as received by GS employees. In this regard, NTEU asserts that the

---

**3.** Because we conclude that OPM's proposed regulation is not arbitrary, capricious, or manifestly contrary to the statute, we need not address the appropriateness of plaintiffs' proposed alternative.

district court improperly relied on the need for the government to "recruit and retain" qualified employees, the condition required for use of special rates under sections 5303(a) and (b). Although we agree that the purpose behind sections 5303(a) and (b) is to recruit and retain, while section 5303(d) is to define the relationship between GS and special rate statutory pay raises, such a distinction does not require invalidation of the proposed rule. Nothing in the statute precludes OPM from combining these purposes and simultaneously making subsection (b) and (d) determinations.

Moreover, contrary to NTEU's suggestion, nothing in the statute requires special rate employees to receive the same pay raise over time. Special rate employees could legitimately be denied the GS pay raise on the ground that the differential between the GS and special rates is no longer required to recruit and retain employees. Thus, under this rule, OPM can phase out the special rate schedule if it concludes that the special rate is no longer needed.

■ Accordingly, we conclude that OPM's proposed rule is a proper implementation of section 5303(d) because it is not arbitrary, capricious, or manifestly contrary to the statute. II NTEU also appeals the district court's holding that they must recover under the new rule promulgated by OPM instead of under the pre–1982 rule. It argues that, contrary to the reasoning of the district court, the mechanical nature of the pre–1982 rule effectuated Congress's intent. The rule, according to NTEU, properly established the relationship between pay raises for GS and special rate employees. Moreover, NTEU contends that the appropriate measure of relief under principles of administrative law is to return the plaintiff to the *status quo ante,* which here would be through use of the pre–1982 regulation.

We agree with NTEU that the district court erred in invalidating the pre–1982 rule. The district court seemingly extracted from our prior rejection of its conversion rule that a proper rule could not be mechanical in nature and must relate to the government's ability to recruit and retain employees. In our prior decision, we noted the flaws with

the district court's approach, *inter alia,* because it provided for automatic pay raises to special rate employees without taking into account pay adjustments given to special rate employees in prior years. Our principal concern with the district court's formula was not the mechanical nature of the rule but the rule's failure to prevent special rate employees from "rid[ing] two income escalators" and, thus, obtaining unintended, duplicative pay raises. *See National Treasury,* 869 F.2d at 576. Our decision noted that an essential feature of a conversion rule under 5303(d) pursuant to congressional intent is to prevent duplicative pay raises. Moreover, the need to recruit and retain employees is not a necessary aspect of section 5303(d). Instead, that concern is addressed by section 5303(b). As such, the failure of the pre–1982 rule to address recruitment and retainment is irrelevant.

The pre–1982 rule, despite its mechanical nature, did ensure that special rate employees would not enjoy duplicative pay raises because it accounted for pay adjustments given to special rate employees in prior years. The rule required that, after a statutory GS change, the minimum rate of the special rate schedule was to equal the nearest GS rate that did not result in a decrease. The first step of the special rate schedule, therefore, would not necessarily receive an increase, and any increase might be less than the GS increase. The rest of the special rate schedule was set as a function of the first step rate and automatically adjusted after the change in the first step was made.

The pre–1982 regulation, therefore, did not result necessarily in an increase in the special rates whenever there was a GS increase, was not based on an increase in a given year, and did take into account pay raises afforded special rate employees in prior years. The primary flaw in the district court's formula— duplicative pay raises—was absent from the pre–1982 rule. Hence, the regulation was a valid implementation of section 5303(d).

The only reason given by the district court for applying OPM's proposed rule retroactively was that the pre–1982 regulation was invalid. Because we hold that the pre–1982

regulation was valid, it is the proper measure of damages for plaintiffs.

## CONCLUSION

Because OPM's rule is not arbitrary, capricious, or manifestly contrary to the statute, but because the district court erroneously based the plaintiffs' recovery on the proposed rule and not the pre–1982 rule, we affirm-in-part, reverse-in-part, and remand for a de-termination of plaintiffs' proper award under the pre–1982 formula.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*